IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DE LAGE LANDEN OPERATIONAL       :        CIVIL ACTION
SERVICES, LLC                    :
                                 :
        v.                       :
                                 :
THIRD PILLAR SYSTEMS, INC.       :        NO. 09-2439


MEMORANDUM

Bartle, C.J.                                    August 27, 2010

        Now pending before the court is the motion of the

defendant, Third Pillar Systems, LLC ("Third Pillar") to amend

its answer and add counterclaims against plaintiff De Lage Landen

Operational Services, LLC ("DLL") pursuant to Rule 15(a) of the

Federal Rules of Civil Procedure.

        The facts of this case are well known to the parties

and will not be set forth in detail here.  Suffice it to say that

on May 29, 2009, DLL filed a complaint in this court against

Third Pillar alleging, among other things, trade secret

misappropriation under the California Uniform Trade Secrets Act

("CUTSA") and breach of contract.  These claims stemmed from a

series of agreements in which DLL hired Third Pillar to develop

and customize a software platform, known as the "Beacon" project,

for use in DLL's vendor finance lending and leasing business.

After a three-day permanent injunction hearing,[1] the court determined that, under DLL's contracts with Third Pillar, DLL owned twelve "use cases," which are detailed step-by-step models of DLL's trade secret business practices that were created in the course of the Beacon platform development.

Third Pillar owned the remaining 41 use cases developed during the course of the Beacon project, as well as all other work done in conjunction with the project.  The court further found that Third Pillar had misappropriated DLL's trade secrets in the twelve use cases that DLL owned, and in doing so, breached its contracts with DLL.  The court issued a permanent injunction requiring that Third Pillar "return and/or destroy ... all copies in any and all forms, formats, and media currently existing (including electronic) of the foregoing twelve Beacon Use Cases, drafts thereof, and any derivative Use Cases that were based, at least in part, on those twelve Beacon Use Cases."

Third Pillar now seeks to amend its answer.  It proposes to remove references to Counts III, IV, and V of the complaint, which the court dismissed on March 5, 2010.  The proposed amendment also seeks to add a counterclaim for trade secret misappropriation and conversion.  Third Pillar now alleges that DLL has misappropriated, or in the alternative converted,

---

1.  The parties had agreed to forego a hearing on a motion for a preliminary injunction and to proceed to a hearing for a permanent injunction.

its work product, including the 41 use cases owned by Third Pillar and various technical elements.

DLL does not oppose Third Pillar's amendment insofar as Third Pillar seeks to remove references to Counts III, IV, and V. However, DLL argues that Third Pillar's proposed counterclaim should be denied under Rule 15(a)(2) of the Federal Rules of Civil Procedure.

Subsection (a)(2) states that the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). Reasons for denying a party's request for leave to amend its pleading include prejudice to the nonmoving party, undue delay, bad faith or dilatory motive, and futility.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Granting leave to amend would be futile where the court lacks subject matter jurisdiction or where the party has failed to state a claim upon which relief can be granted.  Roberts v. Mayor and Burgesses of the London Borough of Brent, 70 Fed. App'x 615 (3d Cir. 2003); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Third Pillar's proposed counterclaim would be futile. In order to prevail on its proposed counterclaim for misappropriation of trade secrets under the CUTSA, Third Pillar must show actual or threatened misappropriation of a trade secret.  See Cal. Civ. Code § 3426.1, et seq.  In its proposed counterclaim, Third Pillar contends that "DLL is using [its trade secrets] without Third Pillar's authorization or consent.  DLL's unauthorized use of the Trade Secrets constitutes

misappropriation of trade secrets..."  The CUTSA provides that

"misappropriation" is

> (1) Acquisition of a trade secret of another
> by a person who knows or has reason to know
> that the trade secret was acquired by
> improper means; or
> (2) Disclosure or use of a trade secret of
> another without express or implied consent by
> a person who:
>> (A) Used improper means to acquire
>> knowledge of the trade secret; or
>> (B) At the time of disclosure or use,
>> knew or had reason to know that his or
>> her knowledge of the trade secret was:
>>> (i) Derived from or through a
>>> person who had utilized improper
>>> means to acquire it;
>>> (ii) Acquired under circumstances
>>> giving rise to a duty to maintain
>>> its secrecy or limit its use; or
>>> (iii) Derived from or through a
>>> person who owed a duty to the
>>> person seeking relief to maintain
>>> its secrecy or limit its use; or
>> (C) Before a material change of his or
>> her position, knew or had reason to know
>> that it was a trade secret and that
>> knowledge of it had been acquired by
>> accident or mistake.

Cal. Civ. Code § 3426.1(b).  While DLL freely admits to using

this information, it denies that such use constitutes

misappropriation as defined in the CUTSA.

On April 24, 2006, DLL and Third Pillar entered into a

Source Code and Object Code Software License Agreement.[2]  This

agreement provides that DLL "has been granted an option to

license the source code and certain other items related to the

---

2.  The court may properly consider the Source Code and Object
Code Software License Agreement because it is a "document
integral to or explicitly relied upon in the complaint."  In re
Burlington Coat Factory, 114 F.3d at 1426.

software developed, licensed, delivered, or provided to [it]..."
Section 3.2 of the agreement describes the grant of the license
to the Beacon project source code.  It provides that Third Pillar
will grant DLL

> non-exclusive, non-sublicensable (except as
> otherwise provided herein), non-transferrable
> (except as otherwise provided herein),
> perpetual (subject to the termination
> provisions of this Agreement), worldwide
> licenses (i) to use and reproduce (in
> reasonable quantities) the Source Code
> internally on computers located at [DLL's]
> facilities or under [DLL's] direct or
> indirect control to create derivative works
> and to assemble and compile copies of the
> Object Code for use solely in accordance with
> this agreement; and (ii) to make copies of
> the Source Code for backup and disaster
> recovery purposes...

DLL would be required to have its employees and contractors sign
confidentiality agreements with respect to the Beacon project
source code, to keep accurate records of those employees and
contractors with access to the source code, and to implement
various other measures to ensure that the source code was
confined to DLL's sole use.  Section 3.3 of the agreement
described the grant of the license to the Beacon project object
code.  It provides that Third Pillar will grant DLL

> non-exclusive, non-sublicensable (except as
> otherwise provided herein), non-transferrable
> (except as otherwise provided herein),
> perpetual (subject to the termination
> provisions of this Agreement), worldwide
> licenses:  (viii) to install and execute
> copies of the Object Code on computer servers
> controlled by [DLL]; (ix) to permit Users to
> access and use the Object Code solely to
> manage leases and loan transactions
> originated, underwritten or managed by one or

more Licensees or their clients[;] (x) to
make a reasonable number of copies of the
User Documentation and distribute those
copies only to Users; and (xi) to make a
reasonable number of copies of the Object
Code for backup and disaster recovery
purposes..."

The agreement compelled DLL to restrict access to the object code to "Users," defined in § 2.10 as "employees, contractors, customers, or agents of [DLL] or of lenders, borrow[er]s and other entities involved in lease and loan transactions originated, underwritten or managed by [DLL.]" As we found in our March 5, 2010 Memorandum and Order, DLL exercised this option on November 14, 2008 and obtained the licenses.

Third Pillar's proposed counterclaim alleges that DLL has committed trade secret misappropriation only by its use of the Beacon project software. DLL acquired Third Pillar's alleged trade secrets through this bargained-for and freely granted contractual agreement. Third Pillar has not, in the proposed counterclaim, alleged that they have violated the terms of the Source Code and Object Code License Agreement or otherwise distributed the trade secrets to third parties. Thus, according to the terms of the CUTSA, DLL has not engaged in misappropriation because it did not acquire the trade secrets through improper means, did not disclose trade secrets acquired through improper means, and did not acquire the trade secrets by accident or mistake. Third Pillar willingly authorized DLL to acquire and use its alleged trade secrets under the terms of the Object Code Software License Agreement.

Third Pillar's alternative counterclaim for conversion fails for the same reason. Under California law, conversion requires that a plaintiff owns or has a right to possess the property at the time of the conversion, that the defendant converted the property by wrongful act or disposition of the plaintiff's property rights, and damages. See Hartford Fin. Corp. v. Burns, 158 Cal. Rptr. 169, 172 (Cal. Ct. App. 1979); Baldwin v. Marina City Props., Inc., 145 Cal. Rptr. 406, 416 (Cal. Ct. App. 1978). Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." See Stevenson v. Economy Bank of Ambridge, 413 Pa. 442, 451-52 (1964). DLL did not acquire the property by a wrongful act nor without Third Pillar's consent. Under the law of either jurisdiction, Third Pillar will not be able to meet its burden to show that DLL engaged it conversion. DLL merely exercised the contractual rights to install, execute, copy, access and use the Beacon project source code and object code granted to it under the 2006 Object Code Software License Agreement.

Accordingly, we will deny, on the ground of futility, the motion of Third Pillar to amend its answer and to add a counterclaim.