IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DE LAGE LANDEN OPERATIONAL SERVICES, LLC | : | CIVIL ACTION |
| v. | : | |
| THIRD PILLAR SYSTEMS, INC. | : | NO. 09-2439 |

MEMORANDUM INCLUDING FINDINGS
OF FACT AND CONCLUSIONS OF LAW

Bartle, C.J.                                                January 26, 2011

Plaintiff De Lage Landen Operational Services, LLC ("DLL") has sued defendant Third Pillar Systems, Inc. ("Third Pillar") for breach of contract and violation of the California Uniform Trade Secrets Act.[1] Before the court is plaintiff's motion for contempt sanctions for defendant's alleged violation of the court's March 5, 2010 Permanent Injunction. The following includes the court's Findings of Fact and Conclusions of Law.

I.

The facts of this case have been set forth in detail in the court's March 5, 2010 Memorandum Including Findings of Fact and Conclusions of Law. In brief, DLL's claims stem from a series of agreements in which DLL engaged Third Pillar to develop and customize a software platform, known as the "Beacon" project,

---

1. DLL's complaint also originally included a claim for injunctive relief, which this court dismissed on August 26, 2009, and claims for unjust enrichment and promissory estoppel, which the court dismissed in its March 5, 2010 Order.

for use in DLL's vendor finance lending and leasing business. DLL contends that Third Pillar wrongly retained and re-used with other customers trade secret materials memorialized in the software development and belonging to DLL under the terms of their agreements.

After a three-day permanent injunction hearing,[2] the court found that under DLL's contracts with Third Pillar DLL owned twelve "use cases," which are detailed step-by-step models of DLL's trade secret business practices that were created in the course of the Beacon project. The court further found that Third Pillar had misappropriated DLL's combination trade secrets in the twelve use cases that DLL owned, and in doing so, breached its contracts with DLL. Finally, the court determined that "mere pecuniary compensation would not afford adequate relief" from the harm done to DLL by Third Pillar's misappropriation. On March 5, 2010, we issued a permanent injunction which required Third Pillar to return or destroy all copies of the twelve DLL-owned use cases in any format and all source code incorporating those use cases.

On March 16, 2010, Third Pillar filed a motion for an extension of time in which to confirm compliance with the injunction. In that motion, Third Pillar stated that it sought extra time in order "to conduct a careful and complete search of

---

2. The parties had agreed to forego a hearing on a motion for a preliminary injunction and to proceed to a hearing for a permanent injunction.

its entire company facilities in order to confirm, without doubt, that no version of the Twelve Use Cases or its incorporated software exists, even inadvertently, within the Company's facilities." The court granted Third Pillar's motion and extended the compliance deadline to April 15, 2010.

On April 5, 2010, Third Pillar filed a motion to alter or amend the court's order and permanent injunction. The motion requested that the court make a number of alternations or amendments, including specific findings that the individual elements of DLL's combination trade secret use cases were not themselves trade secrets, that Third Pillar could continue to re-use pre-existing, public domain, or independently derived information that happened to also appear in the DLL-owned use cases, and that Third Pillar was not required to delete all specific Java "packages" identified by plaintiff's expert Susan Spielman. The court denied this motion, with the exception of substituting the word "license" for the words "purchase" and "lease" in its March 5, 2010 Memorandum.

On April 15, 2010, Third Pillar submitted the affidavit of Pankaj Chowdhry confirming compliance with the permanent injunction. Chowdhry averred that Third Pillar deleted 1.9 million lines of code in 1,556 software source code files containing DLL's trade secret material and modified another 667 software source code files to remove trade secret material. The affidavit provides that: "This material, taken together, is one

hundred percent of the source code that 'incorporates' or was 'generated from' the twelve Use Cases."

DLL thereafter filed this motion for contempt sanctions for noncompliance with the court's order.  In its motion, DLL argues that Third Pillar did not remove the majority of the source code generated from the twelve DLL-owned trade secret use cases.  DLL requested that the court impose sanctions on Third Pillar for contempt by awarding DLL its costs for bringing the contempt motion, including associated attorneys' fees and expert fees.

On December 15, 2010, the court held a hearing on DLL's motion for contempt.  At that hearing, DLL presented Susan Spielman, an expert in software development and the review of software code.  DLL presented portions of Chowdhry's videotaped deposition testimony.  Third Pillar called two witnesses:  Jon Orban, the CEO of Third Pillar, and Robert DeCicco, an expert in the field of computer forensics.  Third Pillar also made several counter-designations of Chowdhry's testimony.

II.

A district court has the power to hold in civil contempt any party who has violated a court order.  See OCE Business Systems, Inc. v. Slawter, 1990 U.S. Dist. LEXIS 15535, at *18 (E.D. Pa. Nov. 19, 1990); see also 18 U.S.C. § 401.  A party moving for contempt must prove by clear and convincing evidence that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the

order.  See Roe v. Operation Rescue, 919 F.2d 857, 868-69 (3d Cir. 1994).  This is a harsh standard, and any ambiguities in the order must be found to favor the party charged with contempt.  See Harris v. City of Philadelphia, 47 F.3d 1311, 1326 (3rd Cir. 1995).  However, "an alleged contemnor's behavior need not be willful in order to contravene the applicable decree.  In other words, good faith is not a defense to civil contempt."  FTC v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010).

Third Pillar concedes that a valid order exists and that it had knowledge of it.  The sole issue is whether Third Pillar has violated that order.  The permanent injunction provided that:

> defendant Third Pillar Systems, Inc., its officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with them:
>     (A)  are permanently enjoined from using, modifying, exploiting, or making available to third parties in whole or in part the following De Lage Landen Operational Services, Inc. Beacon Use Cases:  (1) Create Credit Application; (2) Leasing (Pricing) Quote; (3) Template Maintenance; (4) Rate Card Generation; (5) Partner Self-Service Credit Application; (6) Partner Self-Service Lease Quote; (7) Partner Self-Service Buyout and Trade-Up Quote; (8) Automated Credit Review and Decision; (9) Manual Credit Review and Decision; (10) Partner Qualification; (11) Application Maintenance (a/k/a Appeals); and (12) Pre-Qualification;
>     (B)  are enjoined to return and/or destroy, within fourteen days of the date of this Order, all copies in any and all forms, formats, and media currently existing (including electronic) of the foregoing twelve Beacon Use Cases, drafts thereof, and any derivative Use Cases that were based, at least in part, on those twelve Beacon Use Cases;
>     (C)  are permanently enjoined from using, modifying, exploiting, or making available to third parties in whole or in part the Beacon Source Code incorporating the foregoing twelve Beacon Use Cases, in any form;
>     (D)  are enjoined to return and/or destroy, within fourteen days of the date of this Order, all copies in any and all forms, formats, and media currently existing

>     (including electronic) of the Beacon Source Code
>     incorporating the foregoing twelve Beacon Use Cases, in any
>     and all forms, formats, and media currently existing; and
>         (E)  Third Pillar Systems, Inc. shall file and serve an
>     affidavit within thirty days that all such property either
>     has been returned to De Lage Landen Operational Services,
>     Inc. or has been destroyed.

The permanent injunction was a clear and unambiguous court order. It required Third Pillar to remove all source code from its software that incorporated or was generated from the twelve DLL-owned trade secret use cases "in whole or in part" and "in any form."

It is undisputed that Third Pillar did take some action in response to the permanent injunction. Third Pillar ordered its programmers to review the source code line by line. For each line of source code, the programmers attempted to map the contents back to one of the forty-one use cases that the court had found were owned by Third Pillar. If a line of source code could not be mapped back to a Third Pillar-owned use case, it was assumed to be generated from a DLL-owned trade secret use case and was either modified or deleted.

This process failed to achieve the removal of the vast majority of the twelve DLL-owned trade secret use cases. The material remaining comprises a large percentage of the individual elements of the DLL combination trade secrets to be considered in compliance with the injunction and allows those not authorized to do so to take advantage of DLL's use cases. Accordingly, we find that Third Pillar disobeyed the court's order and is in violation

of the March 5, 2010 permanent injunction, which forbids the use of such source code "in whole or in part" "in any form."

In finding that the vast majority of the twelve DLL-owned trade secret use cases remain in Third Pillar's source code base, we credit the testimony of DLL's expert Susan Spielman. Spielman is an expert in software development and the review of software code, especially code written in Java language such as the Beacon source code. She was retained by DLL to review the Beacon source code when it was licensed from Third Pillar and has continued to work for them examining the code throughout this litigation. Although DLL was not given access to the remediated source code, Spielman mimicked their remediation process and was able to recreate a reasonably accurate model.

Third Pillar provided a list of all source code lines deleted from the source code, and Spielman deleted those identical lines from the most recent version of the source code that DLL could access. It was Spielman's unrebutted testimony that the twelve use cases were being used in the remediated source code in their totality, in the same order and combination as in the written use case form. In fact, both Pankaj Chowdhry, Third Pillar President, and Robert DeCicco, Third Pillar's expert in computer forensics, stated that Third Pillar did not, in fact, attempt to identify or remove the material generated from or incorporated in the twelve DLL-owned trade secret use cases. Instead, they testified that Third Pillar attempted to map each line of source code to one of the forty-one Third Pillar owned

use cases.  If that source code could be connected with any portion of a use case belonging to Third Pillar, it was retained exactly as it had been previously written.  If it could not be traced back to any Third Pillar-owned use case, it was modified or deleted.  Therefore, any individual elements that were present in both DLL-owned trade secret use cases and Third-Pillar-owned use cases were retained by third Pillar.

Spielman testified that the Beacon source code is an "object oriented architecture," which means that the lines of source code are not written in a procedural, step-by-step manner. The lines of source code can generally be classified as having the function of either user interface, business logic, or data models.  User interfaces describe the screens that allow a Third Pillar customer to interact with the software.  Business logics describe the order in which operations would be performed. Finally, data models describe the underlying formulas in which data are manipulated to achieve a certain outcome.  Although Third Pillar had removed the majority of the user interfaces, it has retained the vast majority of the business logics and all of the data models.  Customers can no longer "see" the particular screens, but all of the underlying trade secret business processes found in the twelve DLL-owned use cases still made up the software's functions and results.  That is, the vast majority of the content contained in the English-language DLL-owned combination trade secret use cases remains encapsulated in the source code being currently provided to Third Pillar's customers.

The combination trade secret business processes still drive substantial portions of the leasing and lending business decisions automated in the Third Pillar software.

We find Spielman to be a credible witness, as we did in past proceedings. Moreover, her testimony has not been rebutted. Neither of Third Pillar's defense witnesses stated that the vast majority of the twelve DLL-owned trade secret use cases were removed from Third Pillar's source code base. Pankaj Chowdhry, the President of Third Pillar who oversaw the technical aspects of the source code remediation, did not testify at the hearing. Neither did any of the designations of Chowdhry's prior deposition contradict Spielman's testimony.

Jon Orban, the CEO of Third Pillar, simply testified that he gave instructions that the court order was to be implemented and all offending portions were to be removed from the source code. However, Orban has no technical background and cannot review the source himself or testify to its contents with any authority.

Robert DeCicco, a Third Pillar-retained expert in the field of computer forensics who provided advice during Third Pillar's code remediation process, testified that Third Pillar's methodology for removing the source code was a reasonable one. However, he did not review the source code himself nor could he testify that the twelve DLL-owned trade secret use cases were not present in the source code base. Whether or not Third Pillar acted reasonably or in good faith in its efforts to comply with

this court's permanent injunction is not relevant.  The test is whether Third Pillar did in fact comply with the injunction.  See FTC v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010). The majority of the twelve DLL-owned trade secret use cases remain in Third Pillar's source code.

Third Pillar has argued that Spielman's testimony is unreliable because she has not examined the actual remediated source code base.  We find these arguments unpersuasive. Spielman's methodology of recreating and reviewing the source code is reliable and her testimony is credible.  Third Pillar has produced no evidence that rebuts Spielman's testimony.  We further find that the testimony of Third Pillar's witnesses butresses Spielman's testimony.  Chowdhry at his deposition and DeCicco at the hearing both testified that Third Pillar never attempted to ascertain how much of the twelve DLL-owned trade secret use cases remained in the source code after Third Pillar's remediation efforts were complete.

The crux of this matter is the presence of substantial portions of the DLL-owned trade secret use cases in Third Pillar owned use cases in small, unconnected portions.  In isolation, these small, unconnected portions would not constitute a violation of the court's permanent injunction.  However, due to the manner in which the source code was written, retaining all of these small, unconnected portions amounts to the retention of the vast majority of the DLL-owned trade secret use cases in their protected combinations.  The removal of these substantial

portions of the source code takes priority over Third Pillar's co-equal ownership of the discrete pieces.  Third Pillar's retention of these portions of the source code constitutes a clear violation of the court's permanent injunction.  The fact that Third Pillar never attempted to ascertain how much of these DLL-owned trade secret use cases remained in the remediated source code bolsters this finding.  Accordingly, we will grant DLL's motion for contempt.

      DLL has requested that Third Pillar be ordered to pay its reasonable attorneys' fees and costs, including expert fees and costs, associated with its filing of the motion for contempt. DLL has also requested that, upon completion of compliance with the permanent injunction, Third Pillar be required to provide to DLL a detailed remediation plan explaining and identifying the steps it took.  Finally, DLL has requested that its software expert, Susan Spielman, be permitted to inspect the remediated source code after Third Pillar certifies its compliance to the court.  We believe that these requests are reasonable and will impose them as sanctions against Third Pillar for contempt.